**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**ASHLEY M. ADKINS,**

**Plaintiff,**

**v.** **CASE NO. 2:11-cv-00336**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for child's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

Plaintiff, Ashley M. Adkins (hereinafter referred to as "Claimant"), through her mother, Mary Adkins, filed an application for child's SSI benefits on September 20, 2007, alleging disability as of February 1, 2005, due to depression and back injury. (Tr. at 106-08, 122.) The claim was denied initially and upon reconsideration. (Tr. at 75-78, 84-86.) On January 30, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 87-89.) The hearing was held on June 1, 2009, before the Honorable Andrew J. Chwalibog, at which Ashley and Mary Adkins testified. (Tr. at 34-72.) By decision dated January 22, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-33.) The ALJ's decision became the final decision of the Commissioner on March 17, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) On May 17, 2011, Claimant brought the present action seeking judicial review of the

administrative decision pursuant to 42 U.S.C. § 405(g).

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Under the regulations in force during all times relevant to Claimant's claim, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b) (2010). If the child is, he or she is found not disabled. Id. § 416.924(a). If the child is not, the second inquiry is whether the child has a severe impairment. Id. § 416.924(c). An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.924(d). If the claimant's impairment meets or functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. Id. § 416.924(d)(1). If it does not, the claimant is found not disabled. Id. § 416.924(d)(2). Other applicable rules are found at §§ 416.924a, 416.924b, and 416.929.

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 20.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, scoliosis and social anxiety. (Tr. at 20.) At the third and final inquiry, the ALJ concluded that Claimant's impairments do not meet or functionally equal

the level of severity of any listing in Appendix 1. (Tr. at 21-29.) On this basis, benefits were denied. (Tr. at 29.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born June 18, 1992; thus she was twelve years old on the onset date, sixteen at the time of the administrative hearing, and seventeen when benefits were denied by the ALJ. (Tr. at 20.) Claimant was being home-schooled at the time of the hearing, in the tenth grade. (Tr. at 38.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) Claimant meets or equals, medically or functionally, a Listed Impairment; (2) the ALJ erred in discounting the credibility of Claimant and her mother; (3) the ALJ failed to explain in any meaningful manner why he disregarded the opinions of psychologist Michelle Duling and treating physicians Drs. Chaney and Bowen; (4) Claimant should be rated as "Extreme" in her limitation in the domain of Interacting and Relating with Others; and (5) the ALJ did not allow Claimant's counsel to develop the record. (Pl.'s Br. at 5-11.)

The Commissioner argues that (1) substantial evidence supports the ALJ's credibility assessment; (2) although the ALJ failed to recognize that Dr. Chaney referred Claimant for home-schooling, remand is not warranted for that reason; (3) Claimant's impairments do not meet or equal a Listed Impairment; (4) Claimaint's impairments do not functionally meet or equal a Listed Impairment; and (5) the record was fully developed. (Def.'s Br. at 12-20.)

Functional Equivalence

The court will first address whether Claimant functionally meets or equals a Listed Impairment. The Social Security regulations provide that to determine functional equivalence, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. § 416.926a(a). "Marked" and "extreme" are defined:

> (2) *Marked limitation.* (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your

> day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."
>
> (3) *Extreme limitation*. (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.

§§ 416.926a(e)(2) and (3).

The ALJ determined that Claimant "has marked limitation in interacting and relating with others." (Tr. at 26.) In support of this conclusion, he wrote the following:

> The claimant reported having no friends and rarely leaves her mother's side when not at home. She has been diagnosed with social anxiety (Exhibit 4F). She did go to Prestera for a couple of treatment[s] and her treating physician has prescribed psychotropic medication. However, she testified that she has some friends in the neighborhood and is looking forward to going back to school.

(Tr. at 26.)

Claimant argues that she has an "Extreme" limitation, as found by psychologist Michelle Duling (Exhibit 14F). She contends that the ALJ erred in rejecting Ms. Duling's assessment. (Pl.'s Br. at 9-10.) The Commissioner responds that statements by Claimant, her mother, and her homebound instructor support the ALJ's conclusion with respect to Ms. Duling. (Def.'s Br. at 17.)

The domain of interacting and relating with others addresses how a person initiates and sustains emotional connections with others, develops and uses the language of the community, cooperates with others, complies with rules, responds to criticism, and respect

and takes care of the possessions of others. § 416.926a(i). Specific examples are provided:

> (1) *General*. (i) Interacting means initiating and responding to exchanges with other people, for practical or social purposes. You interact with others by using facial expressions, gestures, actions, or words. You may interact with another person only once, as when asking a stranger for directions, or many times, as when describing your day at school to your parents. You may interact with people one-at-a-time, as when you are listening to another student in the hallway at school, or in groups, as when you are playing with others.
>
> (ii) Relating to other people means forming intimate relationships with family members and with friends who are your age, and sustaining them over time. You may relate to individuals, such as your siblings, parents or best friend, or to groups, such as other children in childcare, your friends in school, teammates in sports activities, or people in your neighborhood.
>
> (iii) Interacting and relating require you to respond appropriately to a variety of emotional and behavioral cues. You must be able to speak intelligibly and fluently so that others can understand you; participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully.
>
> (iv) Your activities at home or school or in your community may involve playing, learning, and working cooperatively with other children, one-at-a-time or in groups; joining voluntarily in activities with the other children in your school or community; and responding to persons in authority (e.g., your parent, teacher, bus driver, coach or employer).

§ 416.926a(i)(1).

For adolescents (ages 12 to 18), the regulations provide further standards to determine whether a claimant is limited:

> By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

§ 416.926a(2)(v). Examples of limitations include not having close friends, and avoiding or withdrawing from known people or being overly anxious or fearful of meeting new people or trying new experiences. § 416.926a)(3).

The court finds that the ALJ's decision that Claimant displays "marked" but not "extreme" limitation in interacting and relating with others is not supported by substantial evidence. The reasons cited by the ALJ are four: attending Prestera for treatment; taking psychotropic medication; testifying that she has some friends in the neighborhood; and saying that she is looking forward to going back to school. (Tr. at 26.) The ALJ rejected the opinion of Michelle Duling, M.A., because "there are no treatment notes or evaluations supporting her limitations." (Tr. at 24.) Instead, the ALJ gave "great weight" to the state agency medical consultants "as their assessments are consistent with the weight of the evidence." (Tr. at 24.) He concluded that Ms. Duling's assessment was based on subjective complaints and not on objective medical evidence or Claimant's testimony at the hearing. (Tr. at 24.) The court will address each point.

Claimant and her mother went to Prestera Mental Health Center on April 14, 2008 for an intake interview. (Tr. at 335.) Her mother participated in the entire interview. The interviewer, Margaret Cuadra, described Claimant's level of functioning: "poor self-esteem;" "allowing students in the public school to interfere with her functioning;" "very meek;" "barely spoke during the intake session;" "poor eye contact;" "afraid of the dark;" "will not sleep in her own room;" "reports anxiety when she is in new situations and when she is around people;" "only really comfortable around family." (Tr. at 335.) Although therapy was supposed to occur up to two times a month (tr. at 336), Claimant attended one counseling session thereafter, and refused to return. (Tr. at 51, 54.)

Claimant's primary care physician has prescribed Lexapro, a medication which is prescribed to treat depression and generalized anxiety disorder. (Tr. at 54.) Claimant testified that she did not like taking the medication for her nerves. (Tr. at 47.)

Claimant's testimony at the administrative hearing was consistent with the descriptions of her interviews with psychologists; she provided very brief answers to questions and did not engage in back-and-forth conversation with the ALJ. When asked if she has friends in the neighborhood, she replied, "Yeah." (Tr. at 42.) Despite the ALJ's and her attorney's attempts to draw her out, the ALJ and the attorney spoke far more than Claimant did. She stated that she sees friends "sometimes," but only at her house. (Tr. at 45-46.)

An effort was made to have Claimant attend school, but on the day that she was supposed to go, riding the bus *driven by her father*, she refused. (Tr. at 390.) She testified that when she attended school for two months in ninth grade, she "got really nervous." (Tr. at 49.)

Psychologist Michelle Duling's evaluation of Claimant was that Claimant has "Extreme" limitation in interacting and relating with others. She wrote: "Social Phobia; Separation Anxiety Disorder; Symptoms & problems reported include, but are not limited to, difficulty talking to people, won't go to restaurants, won't eat in front of others, avoids communicating with family, won't answer or talk on phone, won't ride school bus, won't go to school, sleeps with her mother, panic attacks, no friends, kids make fun of her." (Tr. at 376.) Ms. Duling administered the Conners Comprehensive Behavior Rating Scale for Self-Report and Parent; the result was "Severe Anxiety." (Tr. at 379.)

The state agency medical consultant for mental impairment was Kristen M. Blanks,

M.A. Ms. Blanks interviewed Claimant twice, on March 6, 2008 (age 15) and on October 16, 2009 (age 17, 3 months). (Tr. at 242-47, 388-99.) Ms. Blanks wrote that Claimant's mother attended the interviews and provided most of the information; Ms. Blanks considered her to be credible. (Tr. at 242, 388.) The interviews are consistent: Claimant is extremely anxious and cannot attend school; she is very attached to her mother; she does not interact with other children; she sleeps with her mother; she does not sleep if alone; she does not spend the night away from home; she cannot eat in public; she has anxiety attacks when in public spaces such as a grocery store or shopping mall and a family member must sit in the car with her; she does not participate in any extracurricular activities; she does not leave the home alone; if her mother leaves, Claimant goes with her so that she won't be alone. (Tr. at 242-47, 388-99.) Ms. Blanks concluded that Claimant was "poor" at dealing with work stresses, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. (Tr. at 398-99.) She wrote that "Claimant becomes emotionally upset in unfamiliar settings, particularly when separated from mother." (Tr. at 399.) In other words, Ms. Duling's evaluation and Ms. Blanks's assessment are virtually identical.

The only consultants who concluded that Claimant had a "marked" but not "extreme" limitation in interacting and relating with others were non-examiners Dr. James Binder (tr. at 320-26) and Joseph Steiner, Ph.D. (tr. at 400-05). Dr. Binder gave little information as to why he concluded that her limitation was "marked." Dr. Steiner wrote that her limitation was not extreme because Claimant was cooperative, responds to direct questions, is quiet, shy, pleasant, sweet and polite. (Tr. at 403.) These are not the criteria.

The court concludes that the ALJ's decision to rely on the opinions of the non-

examining consultants is not supported by substantial evidence. Under § 416.927(d)(1), more weight is given to an examiner than to a non-examiner. It appears that the non-examiners did not compare Claimant's reported behavior to the regulations describing "interacting and relating to others." It is apparent from their reports that Ms. Duling and Ms. Blanks credited the statements of Claimant and her mother that Claimant does not initiate exchanges with other people for any purpose, she cannot undertake a simple task such as asking a stranger for directions, when she attended school she did not interact with other students, she does not have intimate relationships with others except possibly her mother, she does not participate in verbal turntaking, she does not play, learn, and work cooperatively with other children or join voluntarily in activities with others. Claimant appears to be incapable of expressing her feelings, asking for assistance, seeking information, describing events or telling stories in all kinds of environments and with all types of people.

The ALJ was in error when he wrote that he did not find "any statement from Dr. Chaney stating that the child should be taken out of school due to [scoliosis]. (Tr. at 24.) As the Commissioner has conceded, Dr. Chaney made such referrals on September 6, 2007 and October 16, 2007. (Tr. at 289, 297. These dates coincide with Claimant's mother's statements to Ms. Blanks that Claimant attended only a few days of ninth grade classes. (Tr. at 244, 389.) The court finds that as of September 1, 2007, Claimant had "Extreme" limitation in interacting and relating to others and thus functionally met the criteria for establishing disability. Claimant's application for Supplemental Security Income benefits was filed on September 20, 2007; pursuant to § 416.335, Claimant is entitled to benefits beginning October 1, 2007.

The court declines to address the remaining arguments raised by Claimant.

For the reasons set forth above, it is hereby **ORDERED** that the final decision of the Commissioner is reversed, this case is remanded to the Commissioner for award of SSI benefits effective October 1, 2007, and for computation of past-due benefits, and this matter is dismissed from the court's docket.

The Clerk is directed to transmit this Memorandum Opinion and Order to counsel of record.

May 29, 2012
Date

Mary E. Stanley
United States Magistrate Judge